JANUARY 1830.

## SADLER, et al v. ROBINSON's heirs.

1. Where money has been paid under a contract, which is rescinded, or alleged to be fraudulent, an action at law lies to recover it back; and in the absence of special allegations of failure of proof, or other matter of equitable relief, Chancery has no jurisdiction.
2. Chancery has not the power arbitrarily to annul or rescind contracts to administer justice, but is bound by rules and precedents.
3. A party cannot claim a rescission of a contract for fraud, after entering into new stipulations concerning it, with a full knowledge of the fraudulent circumstances.
4. Where a contract has not been rescinded, or otherwise determined, the purchase money cannot be recovered back.
5. Long acquiescence in a transaction, without objection, will create a presumption of a waiver of a fraud, and recognition of an act done by another.
6. Where a firm purchased lands. and one of the partners was an infant, he cannot recover back his portion of the purchase money paid to the vendor, the contract being binding as to the other partners, and they having the right to control the firm funds.

THIS cause came by appeal from the Circuit of Madison, sitting in Chancery.

The bill was filed in 1823, by Isaac Sadler, Ethelwin Sadler, and Silenus O. Sadler, against Paulina Robinson, widow of Littleberry Robinson, deceased, and John Dickinson, and Frances, his wife, Rodah Horton, and Christiana, his wife, James Robinson, William Robinson, heirs and distributees of said Littleberry, and William Patton, his administrator. At November term, 1828, the cause came on to be tried on the bill, answers, and proofs, and the Chancellor in the Court below rendered a decree in favor of the complainants, Isaac Sadler and Ethelwin Sadler, surviving partners of the firm of Isaac Sadler & Sons, for so much land as at the price of forty five dollars per acre, would amount to the sum of seventeen thousand dollars; divesting the defendants of title to so much, and vesting it in the complainants, and appointing commissioners to lay it off, and allot it to the complainants. From this decree, the defendants appealed. The record is very voluminous, and contains a great variety of allegations, which are complicated, and set forth much in detail. The facts deemed the material and leading ones by the Court, and those on which the decision was made, are recited in the opinion delivered in the following words:

" It appears from the bill, that in the summer of 1818, Isaac Sadler, the father, Ethelwin Sadler, and Silenus Sadler, the sons, made an agreement with Littleberry Robinson, for the purchase of six quarter sections of land, situa-

ted in the county of Madison, for the sum of forty-three thousand dollars, to be paid in instalments, at different periods of time; that the agreement was in writing, under seal, and executed for the purchasers in the name of J. Sadler & Sons, under which name and style, the purchasers conducted a mercantile establishment; and that Silenus was an infant under the age of twenty-one years. It is charged that Robinson employed what the bill styles, divers stratagems and devices, by which various partial modifications of the contract of purchase were extracted from J. Sadler & Sons, after all which modifications, and with a knowledge of the devices and stratagems alleged, in the latter part of the year 1819, J. Sadler & Sons consented that Robinson should convey the lands agreed to be sold to them, to one Rob't Greer, upon the understanding that Greer would convey the same to two individuals named, *in trust*, to secure the balance of the purchase money remaining unpaid, which several conveyances were executed, and the note of the appellees given to Robinson to pay the amount secured. In the spring of 1820, Robinson proposed to Greer to deliver up to him the notes of J. Sadler & Sons, if he would reconvey to him the lands in consideration thereof. Greer consented, received the appellees notes, and made a re-conveyance, without their consent previously or subsequently given. The bill prays that the purchase money paid by the appellees to Robinson, may be refunded.

From the answers and proof, it appears that the lands had greatly depreciated in value between the summer of 1818, and the spring of 1820; so much so, that at the latter period, they were not worth as much as the part of the purchase money which remained unpaid, though at the time of the purchase, the contract was considered an advantageous one for the purchasers. It also appears that J. Sadler & Sons had become insolvent, and ceased to do business for some time before the re-conveyance by Greer and that the conveyance by Robinson to Greer, was made at the request of J. Sadler & Sons, who stated at the time of the request, that they owed him a large sum of money, and the only means they had of paying him was to permit him to retain what the land would yield, after paying what was due to Robinson. It further appeared, that the re-conveyance was made without the concurrence of the appellees, but that Ethelwin Sadler, with a knowledge that Greer had re-conveyed to Robinson, observed to the appellant Horton, that he thought the land was worth more than the balance of the purchase money, but that Greer

JANUARY 1830.

Sadler et al.
v.
Robinson's
heirs.

must do as he thought best. The bill, answers, and proof, discovered several other facts, which it is not deemed material to recite, as a decision of the cause does not in any manner depend upon them. Many of the alleged stratagems and devices are explained away by the answer of Horton, or disproved by depositions. Pending the suit, Silenus D. Sadler died, and the cause is continued in the name of his administrator."

HOPKINS and BRANDON, for the appellants, argued, and cited 1 Marshall, 311, 165, 513. Coxe's Digest, 748, section 45; 727, section 49. 2 Desaussure, 145. 9 Johnson, 285. Newland on Contracts, 11, 14. 3 Johnson's Chancery Reports, 23. 9 Cranch, 160. 3 Johnson's Cases, 60. 1 Johnson's Chancery Reports, 370, 582. 4 Dallas, 345. Littell's Selected Cases, 340. 7 Cranch, 97. 2 Marshall, 149, 512. 3 Atkyns, 190. 12 Johnson's Reports, 436. 9 Johnson, 450.

HUTCHISON and SHORTRIDGE, for the appellees, in reply, cited 9 Johnson, 450. 6 Johnson's Chancery Reports, 111, 222. 5 Johnson's Chancery Reports, 224. 1 Johnson's Chancery Reports, 131, 273. 14 Johnson, 15. 17 Johnson's Reports, 437. 7 Johnson's Chancery Reports, 547. 4 Cranch, 137. 6 Munford, 261. 1 Marshall, 505.

By JUDGE COLLIER. The object of the bill, though it has a prayer for general relief, is obviously to recover from the appellants the money paid by the appellees to Robinson in his life time, on the footing of their purchase; and so considered, it cannot be entertained; because the powers of a Court of law are as adequate to the achievement of its purposes as those of Chancery.[a] No reason is suggested by the bill, why the appellees cannot have justice administered to them at law; no discovery is asked for, as essential to enable them to prosecute their rights; no deficiency of strict legal proof is complained of. On what ground then the appellees ask the interposition of Equity, we are unable to comprehend. It cannot be because they charge their vendor with fraud; for every circumstance alledged as fraudulent, could it avail them, is fully examinable at law. Is then Chancery appealed to, to rescind the contract of purchase, that all barriers to a recovery by the appellees may be removed? It possesses not the transcendant power of annulling the contracts of parties causelessly and at pleasure. It is its of-

*a* 2 Comyn.
Con. 52 to 86.

fice to interpose, when the law is unintentionally harsh, by the application of general principles to particular cases; or where the law forums, by reason of their rules of procedure, are so restricted in the dispensation of justice as not to embrace within their reach particular cases, because of the complexity of facts or the peculiarity of the remedy. In its judicial action, principle and precedent are its guides; it claims no dispensing authority.

It is already remarked that the object of the appellees' bill can be as well attained at law as in equity. But neither tribunal can afford them the relief it contemplates, unless their contract of purchase has been rescinded either by the election of one of the parties when it was competent to elect or by their mutual consent. In order to ascertain whether there has been a recision, it cannot be important to inquire how far the circumstances existing anterior to the conveyance to Greer, and alledged as fraudulent are sustained by proof; or whether in themselves they constituted such a fraud as authorized the appellees to consider the contract between them and their vendor as at end. From the shewing of the appellees, the agreement to purchase was varied, according to the wishes of Robinson, with a full knowledge that these circumstances had transpired; the appellees do not shew that they were forced to consent to a modification of their contract, by the employment of that physical or moral coercion, which is held sufficient to avoid a contract at law or in equity. If Robinson had refused to perform the agreement on his part, it was competent for them to have rescinded it, and to have recovered back so much money as had been paid on the faith of the purchase. This course they seem not to have adopted, but to have stipulated again and again, according to the varied requisitions of their vendor. And they cannot now be heard to say that the contract is at an end, for any cause of which they were advised previous to the conveyance from Robinson to Greer, which it is admitted was made with their approbation. If a party may abandon his contract while *in fieri*, he should act promptly and decidedly on the first breach of the other party. If he afterwards negotiate with him, he waives his right to rescind the contract.[a]

A fraud, in legal understanding, is the *suppressio veri*, or the *suggestio falsi;* hence there can be no fraud where a party possesses full information in regard to the subject about which he contracts. The fraud charged, antecedent to the transfer of title from Robinson to Greer, being

JANUARY 1830.

Sadler et al.
v.
Robinson's
heirs.

[a] Lawrence v. Dale, 3 John. Ch. Rep. 23.

JANUARY 1830.

Sadler et at.
v.
Robinson's
heirs.

within the knowledge of the appellees, they cannot be permitted to insist on it. Whether subsequent circumstances can avail the appellees, will depend upon a solution of the question, whether these circumstances evidence a fraud, or whether they have not been waived by the appellees.

In respect to the recision of the contract, none of the circumstances related by the appellees in their bill, shew that it has been rescinded. If the vendor had refused to perform it, it might then be considered as rescinded; but it does not appear that performance has ever been refused by him or his heirs.[a] We are not authorized to consider the re-purchase from Greer by Robinson, as having been made because of his unwillingness to comply with the contract of sale to the appellees; but rather because of the inability of the appellees to comply. Lands, located where the tract in regard to which this controversy is, had depreciated very greatly in value between the time of their purchase and the re-sale by Greer; so much so, as to render it of less value than the balance of the purchase money due.

*a* Ketchum v. Evertson. 13 John 359.

If Greer reconveyed to Robinson without the authority of the appellees, by the acceptance of the deed, Robinson was placed in the situation, with regard to them, which Greer had before occupied. And if equity would have considered Greer as a trustee for them, obliged to convey his *cestui que trust,* when they should complete the payment of the purchase money, Robinson would be so considered, and incur a similar obligation; and might be compelled, if the appellees have not waived their right, upon a suit in equity, offering to pay the balance, and praying a performance according to the contract of purchase, to convey the legal title. But this is not the relief which the appellees desire.

Saying nothing of the circumstances of suspicion, under which the appellees came before the Court, their long acquiescence in the transfer of title from Greer to their vendor, without having objected to it, or offered to comply with their contract, or demanded a compliance from Robinson or his heirs, may well authorize the inference, that it had received their subsequent assent, either expressly or impliedly. The appellees deny that they have ever assented to the re-conveyance. Greer, in his deposition merely relates that the re-conveyance was made without their approbation or concurrence. The circumstances are such, however, in the absence of an express dissent, as to authorize an inference of assent.[b]

*b* Clark's executors v Van Reimsdyk, 9 Cranch, 154.

The record does not present the question as to the competency of Greer as a witness; his relationship to S. O. Sadler, only appears incidentally in the answer of the appellant Horton, which in that particular is not responsive to the appellee's bill.

In respect to the infancy of S. O. Sadler, when the purchase was made, it can have no influence upon this controversy; if the contract was void as to him, it would still be valid as to the other purchasers; and even if the purchase money was paid by the firm, his portion cannot be recovered back, unless a fraud was practised upon his rights by Robinson, in procuring payment from that source. It is competent for one partner to dispose of the money of the firm, for what purposes he pleases; and where there is no fraud on the the part of the receiver, he will not be compelled to refund. It is not pretended that Robinson, in the reception of the money, acted in fraud of S. O. Sadler's rights. Infancy might have availed him as a defence, had suits been instituted against him on the notes made by the firm.

It is needless to inquire how far one partner can bind the firm, by writing under seal in the co-partnership name; neither the bill nor the proof bring that point legitimately before the Court. The agreement for the purchase was executed in the name of the firm, but for any thing appearing to the contrary, all the partners were present, assenting to the purchase and the execution of the agreement which would make it as valid as if each had executed for himself.

To recapitulate, we have endeavored to establish, 1. That the appellees can only have a return of the money paid, upon the contract being rescinded; to obtain which the remedy at law is fully adequate; 2. That the contract has not been rescinded, hence there can be no recovery; 3. That the infancy of S. O. Saddler cannot avail the appellees, as Robinson, in receiving the money of the firm, did not intend a fraud upon his rights; 4. That the re-conveyance by Greer to Robinson has received the implied assent of the appellees, may be inferred from their long acquiescence, and other circumstances. The record presents other questions which we have omitted to examine, either because they are embraced by those considered, or are unimportant to a decision of the cause.

We are of opinion that the decree of the court below must be reversed.

Judge Perry not sitting.