## DECEMBER TERM, 1843.

### John M. Pintard *v.* Green T. Martin, *et al.*

Where a vendee takes from his vendor such title only as the vendor had, he cannot afterwards, for mere defect in title, obtain a rescision of the contract.

Where a vendee comes to the knowledge of a fraud practised upon him in the sale of property, and afterwards continues for a series of years in the use, enjoyment, and occupation thereof, without taking any active measures for redress, or making known any dissatisfaction, until a change of times may have depreciated its value, he can have no relief in equity.

A court of equity will never rescind a contract, unless the parties can be put *in statu quo.*

Where a party having knowledge that he has been defrauded, proceeds to do acts in confirmation of his contract, by voluntarily entering into a new engagement concerning it, he will be held thereby to have waived the fraud, and to have renounced that relief which he might otherwise have had in equity.

THE abstract and brief, prepared by L. Sanders, Jr., Esq., present a very full and fair statement of the case, and have been accordingly adopted.

The bill was filed on the 9th of May, 1842.

*Sanders* and *Price,* for complainant.

The bill charges that on the 14th February, 1839, the defendants Martin, Compton, and Lawton, represented that they were a committee of certain persons thereinafter named, styling themselves the Steam Saw Mill and Cotton Press Company, at Rodney, Mississippi ; that said company were the owners of the land and adjacent lands, lots of ground, described thereinafter, upon which a certain grist and saw mill was then being erected and partly finished, together with the property, real and personal, thereto belonging and appertaining, excepting certain machinery for a steam cotton press. Complainant, and one John Chaney, confiding in said representations of said Martin, et al., contracted with them for the purchase of said property, at the price of $4812 ; a memorandum whereof was then reduced to writing by said committee, and signed by them, copied in said bill and the original filed, marked Exhibit A, which sells to said Pintard and Chaney " all the right, title, interest, property, claim, and demand, either in law or equity, that the said com-

pany has in and to the saw and grist mill now partly finished ; and all the property, both real and personal, thereto belonging or in any wise appertaining, excepting the machinery for a steam cotton press; and we further assign and transfer to said Pintard and Chaney, the bond of H. M. Bassett to said company, for title to certain property therein mentioned ; also, the bond of Sarah Calvit for title to certain property therein named as the Greenwault property." The bonds referred to are filed exhibits B and C, and are referred to the Court as the best explanation of them. The bill shows that on the 4th January, 1838, Jacob Greenwault, since deceased, for the ex-pressed consideration of $8000, secured to be paid by J. B. Warren, G. T. Martin, Fauver and Farnsworth, John Goodin, and Thomas A. Compton, did assign and set over and transfer all the right, title, interest and claim, and demand, mentioned in a certain obligation of Sarah Calvit, meaning Exhibit C; which assignment is made Exhibit D, and part of bill. That at the time of said purchase, said mill was erected mainly *upon and across* the eastern end of said Commercial street, as laid off by the incorporation of Rodney, em-bracing a few feet upon lot No. 1, described in one of said exhibits. It was bounded on the N. E. by a bayou emptying into the Missis-sippi river, which bayou was considered and represented by said committee, at the time of said purchase, as appurtenant and consti-tuting a part of said mill property, and was and is in fact essential to the profitable working of said mill ; that on the north of said mill-building there is a strip of land, of about 25·feet wide and 45 feet deep, extending to the Mississippi river, over which there is and was in progress, a *log-way* for carrying of logs used and sawed at said mill ; that said piece of land was represented to complainant by said committee, at the time of said purchase, as constituting a part and parcel of said mill property and of its appurtenances ; that the only inducements complainant had, at the time of said purchase, were the anticipated profits of working the same as a saw mill; that the only source of a supply of timber to said mill to make its work profitable, is by floating it on the Mississippi river and landing it op-posite the front of said mill, and floating the same into said bayou ; which, by its position and contiguity to said mill, affords a safe and convenient harbor for the same, and is absolutely necessary for the

support and profitable working of said mill. Complainant files a rude diagram Exhibit (E), showing the position of said mill, and lots and streets and bayou, and parcel of ground, in front of said mill; that in addition to the said sum of $4,812·50, he and said Chaney agreed to pay to said committee, for and on behalf of said company, the further sum of $15,159·52, by the taking up and paying the following claims against said company: one note to Commercial Bank, of Rodney, due on the 9th July, 1838, signed by Andrew Brown, G. T. Martin, A. Farnsworth, Thomas A. Compton, and J. B. Warren, for $2,562·27 ; note to same, by same parties, due 9 – 12 March, 1839, for $2,747·25 ; notes to J. Greenwault, for $2500, $2000, and $1500, making $6000 ; to H. M. Bassett, due 1 May, 1837, for $1125 ; claim of J. M. Smith, for $1725 ; a memorandum of which Exhibit F, is made part of bill: shows that said mill stock, as represented by said committee, is in fifty shares, and composed of the following named persons : J. M. Smith, 4 shares ; J. Goodin, 4 ; G. T. Martin, 4 ; Josiah Lawton, 4 ; Fauver and Farnsworth, 12; John Ducker, 7; George Overaker, 4 ; T. A. Compton and J. B. Warren, 4 ; R. B. Rickets, 2 ; Abn. Montgomery, 2 ; Andrew Montgomery, 1 ; James B. Knight, 1, and Charles W. Davenport, 1 share.: that the said Fauver, J. M. Knight, and John Ducker, were dead at the time of making said contract by complainant and said Chaney; that at the time of said purchase, complainant and said Chaney were entirely ignorant of the manner of the association of said company, or of whom it was fully composed ;—but confiding in the fair dealing and integrity, and legal knowledge, of the said committee, he and said Chaney went on to improve and finish said mill, at their own proper costs, and did thereby expend, in finishing the same, the sum of at least three thousand five hundred dollars ; they expended in permanent and lasting improvements, and necessary repairs on the house on said Greenwault's lot, at least the sum of five hundred dollars ; and paid the shareholders the following sums of money: G. T. Martin, $449·40 ; George Overaker, $428 ; J. M. Smith, $227·08 ; J. W. Davenport, $112·30 ; to Andrew Montgomery, about $200 ; and gave to each of the other stockholders (subsequently, as dates show), through said committee, their notes for the amounts they were respectively

entitled to agreeably to the terms of their original contract, which are either outstanding, or on which judgments have been obtained against them, and hereinafter shown : refers to exhibits G, H, I, and J, of those taken in and paid, as part of bill : shows how the said claims were adjusted and suits instituted by the holders, and complainant and Chaney becoming bound in forthcoming bonds, &c., referring to suits, &c.; the purchase of land of said Smith, after discovering that a portion of it did not belong to said company, as by said committeestated ; the contract of which is filed.

Complainant shows that, on the 18th day of March, 1841, he purchased from said John Chaney his entire interest in said mill property, and exhibits the written evidence thereof, marked M, and made part of bill. Complainant charges that he never had occasion to investigate the title of said company to said mill property, until some time after his purchase of the said interest of the said Chaney; that he was directed to the same in consequence of some threats received of said Smith, one of said company, and who stood by and saw complainant purchase the same and make lasting and valuable improvements thereon, without disclosing to him the condition of the title of said property. Complainant expressly *charges that the said mill company have no title to the ground upon which said mill stands; that said company never had any title to the largest portion of the ground upon which it stands, either in law or equity; that they have no title either in law or equity, for said bayou, or said piece of land between said mill and the river, used as a log-way.* That committee at the time of the said sale knew that they had no title to the same, but fraudulently and unjustly withheld from complainant and his then partner, Chaney, all information in regard to said deficiency of title as within their knowledge ; that said committee at the time of said sale fraudulently and falsely represented unto complainant, that they had full power and authority to sell said property, when in truth and in fact they had no sufficient or valid authority whatever to sell or dispose of the same, from the said members of said company; that at the time of said sale, said Knight, Ducker, and Fauver, were dead, and no one of their heirs or legal representatives has ever authorized the said Martin and others, acting as a committee, to sell said property for them ; that on the

14th day of February, 1839, there were judgments in the circuit courts of Jefferson and Adams county, against the estates of said Thomas A. Compton, said Fauver & Farnsworth, George Overaker, Jeremiah B. Warren, and said Ducker, before his death, which remain due and unsatisfied, and which severally now remain and constitute liens upon said property, if they, the said last mentioned stockholders, or said company, had any title thereto ; that at the time of said purchase complainant and said Chaney were wholly ignorant of any such judgments or liens, and never discovered the same until recently, as before stated : shows the different judgments recovered and the bonds signed for said assumptions and levies made upon said property, and charges that each bond so signed was at the instance and request of said committee ; and the plaintiffs in each of said judgments well knew that the bonds were signed by complainant and Chaney solely for the purpose of complying with the conditions of said purchase, believing at the time that he had acquired a full and complete legal and equitable title in and to said property, and did not discover to the contrary until afterwards, as before stated.    Shows also, that he has been sued for the recovery of said lots and land, in an action of ejectment, instituted in the circuit court of Jefferson county, wherein John Doe, on the demise of John Ives, and others are plaintiffs, against the said Green T. Martin, the said Chaney, complainant, and others, amongst whom also is the said James M. Smith, defendants ; by means of all which he alleges he has been greatly cheated and defrauded, and has sustained great loss of credit in and about his business, by and in consequence of his being unable to exhibit and show title in said property, or in those from whom he purchased it; or if such persons had any title, it is a mere equity, laden with incumbrances and difficulties, that complainant knew not of at the time of his purchase, and which would be unjust, inequitable, and oppressive, for him to remove, if indeed the same were practicable, which is not believed by him to be so ; and in consequence of which, also, he is unable to sustain and obtain that credit which entered into the essence of the original purchase, and which it was understood and known by all the parties to said purchase, would be expected and looked for by complainant and said Chaney, at the time of making the same ; for

Pintard *v.* Martin, et al.

it was expressly represented by said parties at the time, that should complainant and Chaney be unable to meet the payments by the reasonable profits of said mill, that, with the improvements which he and Chaney should put upon the same, and in truth were put upon it, they would be able to sell said property for a large profit, and thereby be enabled to pay said purchase-money; but in consequence of the defect and utter want of title in same by said company, no one is willing to purchase it for any price whatever, as known to complainant ; and complainant is unwilling to hazard either more of his capital, or labor, or industry upon it, from the just apprehension he entertains that the same cannot be held by him, or a good title be acquired for the same ; charges fraud and insolvency; makes each one in interest a party; prays that said judgment creditors may be enjoined from proceeding in said judgments (no injunction was ever granted, or bond executed); that the defendants answer, &c.; that said committee exhibit their title, &c.; and, on final hearing, prays this honorable court to decree a rescission of said contract with said committee and said J. M. Smith, and that they be compelled to take back said property purchased as aforesaid, which he offers, and tenders ; perpetually to enjoin the judgment holders from proceeding on said judgments as against him, and that said notes outstanding be surrendered and cancelled ; and prays a decree over against said Martin and the mill company, for the aforesaid sums of money paid by complainant and said Chaney, in pursuance of said purchase, together with the amount expended in making improvements, &c.; and for general relief.   The bill is sworn to.   The defendant Smith has filed a separate demurrer ; no other defendant has appeared.   And this cause is now set down by complainant, on motion, to be heard upon general demurrer.

If the allegations of the bill are true, we have no doubt that a good cause for equitable jurisdiction and relief is made out.   The fraud is strongly charged ; the defect of title clearly stated ; the importance and absolute necessity of the slip of land next the river, and of the bayou, for the purpose of the mill, clearly shown ; and it is also shown that the mill itself stands upon a public street of Rodney, the title of which belongs to the corporation and successors, or the people of the place.   The subjects are so familiar to your

Honor, that I think I should trespass by referring to general princi-ples, no particular case is required to elucidate.

*J. A. Guernsey*, for defendant Smith.

I submit the following points :

1st. That Smith does not appear by the bill to have been a party in any wise to the original contract between the "committee," and complainant, and Chaney, nor to the bond in relation to the " Greenwault " property, executed by Sarah Calvit.

2d. That Smith should not be held accountable for any alleged misrepresentations made by said "committee."

3d. That if there were judgment liens upon the property, purchased by complainant and Chaney, at the time of the purchase, the doctrine of " *caveat emptor* " fully applied, there being no warranty of title, and the same rule applies to the manner in which the company was formed.

4th. That Smith, individually, was not bound in law or equity to notify complainant of the defect in the title derived from the " mill company," through the committee.

5th. That Smith, as an individual, cannot in any way be held to convey to complainant a *right* of *way* over his *individual* property, to *enhance the value of*, or *even to render valuable*, the property conveyed by a committee of an informal association, of which he was an inconsiderable member ; nor can he be held to convey such right of way, for the purpose of *enhancing the value* of other property, bargained by *himself* to complainant and Chaney, when the property *so bargained*, independent of that conveyed by the committee, is not to be affected by such right of way.

CHANCELLOR.   This case was submitted on the demurrer of Smith, one of the defendants thereto.   The object of the bill is to rescind a contract, made by the complainant, with three of the defendants, representing themselves and the other defendants as the owners of a steam, saw, and grist mill, situated in the town of Rodney.   The grounds upon which a rescission is asked, are : 1. That the defendants had no title, whatever, to any part of the

ground on which the mill is situated. 2. That they fraudulently rep-
resented as included within the boundary of the mill property, a
piece or lot of ground, which is essential to its value and enjoy-
ment, but which, in fact, is not so included. 3. That the defendants,
from whom he bought, had no power to bind the other joint owners
of the property. 4. That an action of ejectment is now pending
against him, under a title adverse to that of his vendors. As to
the objection for want of title, it is a sufficient answer to say, that
the complainant appears to have accepted a mere quitclaim, by
taking a conveyance simply for such title as the defendants had ;
he can have no relief, therefore, on that ground. As to the want
of power, on the part of those who made the conveyance, to bind
the other joint owners, even if authority was wanting, it is ap-
parent, from the statements of the bill, that the other owners, or
partners, subsequently recognized the validity of such sale by acting
under it, taking the benefit thereof, and performing such other acts of
recognition, as would bind them, at least, in a court of equity.
The complainant's only claim to relief rests upon the allegation of
fraud. In addition to the charge of fraud upon *all* the defendants,
it is specially charged against the defendant Smith, that, although he
was one of the joint owners of the mill property, so purchased by
the complainant, he afterwards set up a separate claim in himself,
to a part of the land which had been falsely represented as included
in said purchase. It appears, that the complainant then purchased
the disputed portion from Smith, took from him a mere quitclaim
deed, and gave his note for the amount agreed on, including also
Smith's share of the purchase-money agreed to be paid to him,
under the first sale. The complainant now asks to rescind both
contracts, and to enjoin the collection of the money due on the
note. It is apparent from the bill, that he has been in the posses-
sion and use of the property since February, 1839 ; and it is quite
clear, that, as early as February, 1840, when he was advised of
Smith's claim, and purchased the same, he must have then become
acquainted with the nature and extent of the fraud, if any, which
had been practised upon him in his first purchase ; and yet we find
him, at that point of time, waiving any vice that may have infected
the original contract, by renewing his obligation relating thereto,

Pintard *v.* Martin, et al.

so far as Smith was concerned, and then remaining quiet for more than two years before filing his bill, or instituting any active measures for relief, against the alleged fraud. These facts appear from the bill, and accompanying exhibits, and are therefore proper subjects for notice under the demurrer. Whether they amount to a waiver of the alleged fraud, and a confirmation of the original agreement, is the question to be decided. I think it may be safely laid down as a rule of equity; that where one comes to the knowledge of a fraud practised upon him, in the sale of property, and afterwards continues for a series of years in the use, enjoyment, and occupation thereof, without taking any active measure for redress, or making known any dissatisfaction, until a change of times may have depreciated its value, he can have no relief in chancery. To extend relief, under such circumstances, would be to encourage one fraud, to the end of giving relief against another. As a general rule, a court of equity will never rescind a contract, unless the parties can be put *in statu quo ;* nor will it lend its aid to one, whose hands are contaminated with the very vice which he charges upon his adversary, as a ground of relief. *M'Donald* v. *Neilson,* 2 Cow. Rep. 139.

In this case, the complainant not only remained passive for years after he was advised of the alleged fraud, but, with a knowledge of all the circumstances, reaffirmed the contract, by voluntarily obligating himself anew to perform it. The authorities fully establish the position, that if a party, having knowledge that he has been defrauded, proceeds to do acts in confirmation of his agreement, by voluntarily entering into a new engagement concerning it, he will be held thereby, to have waived the fraud, and to have renounced that relief, which he might otherwise have had in equity. Fonbl. Eq. 129 (note (r), 3 Am. ed.) ; *Chesterfield* v. *Jansen,* 2 Ves. sen. 125 ; 1 Atkyns, 354 ; *Morse* v. *Royall,* 9 Ves. 364 ; *Sadler* v. *Robinson's* heirs, 2 Stew. Rep. 520.

I am accordingly of the opinion, that the demurrer of Smith must be sustained, and the bill, as to him, dismissed.