# Merritt *et al. v.* Ehrman.

*Bill in Equity for the Rescission of a Contract.*

1. *Rescission of contract of purchase of the stock of a corporation; sufficiency of bill.*—On a bill filed for the rescission, on the ground of fraud, of a contract by which the complainant purchased of the defendant a certain number of shares of the stock of a corporation, when it is averred that the complainant, prior to the execution of the contract sought to be rescinded, entered into a written agreement with the corporation, in which said capital stock was owned, for the purchase of the assets of the corporation, but that said agreement was mutually rescinded, and the parties returned to their former rights and conditions, and that subsequently the contract sought to be re-

[Merritt, *et al.* v. Ehrman.]

scinded was entered into with the defendant as a stockholder, it is not necessary, in order to maintain such bill, for the complainant to offer therein to carry out the first contract or agreement made with the corporation; it not appearing that the rescission of the first contract constituted a part of the consideration for the second, so that the complainant would be equitably bound to perform the first contract as a condition precedent to the rescission of the second, and the two contracts being made by different persons in the purchase of different property.

2. *Same; same.*—Where the purchaser of the controlling interest of the stock of a corporation files a bill to rescind the contract of purchase, on the ground of fraudulent representations on the part of the owner of said stock, upon which the purchaser relied as an inducement to make the purchase, and it is shown by the bill that the purchaser went into possession and control of the corporation, it is not necessary that such purchaser, as a condition for the obtaining of the relief prayed for, should offer in his bill to account for the use and occupation of the corporation from the time of his taking possession; his indebtedness in respect to such use being to the corporation, which was not a party to the suit, and not to the stockholder from whom the stock was purchased.

3. *Same; estoppel against corporation; when not shown to exist.* When in a sale of the stock of a corporation, the stockholder falsely represents that the corporation has practically no debts, and this representation is relied on by the purchaser as an inducement to the purchase, such stockholder is not thereby estopped to subsequently assert, as against the corporation, a large indebtedness to him from it. The wrong done by the false representation not being against the corporation or its franchises, but being solely a wrong done by the owner of the stock to his vendee thereof, the corporation was not in any way injured.

4. *Jurisdiction of equity in case of fraud; when remedy at law adequate and complete.*—In all cases of fraud, before it can be said that the remedy at law is full, adequate and complete, it must appear that the defrauded party can obtain immediate relief, either by affirmative or defensive action, or that he can not be subjected to vexatious litigation at a distance of time when the proper evidence to repel the claim may have been lost or obscured, or when he may be disabled from contesting its validity with as much ability and force as he can contest it at the present time.

5. *Same; same; fraud in a contract of purchase.*—Where a purchaser has been induced, by fraud, to make a purchase, and gives his notes and mortgage in part payment of the purchase price, upon the discovery of the fraud, he may maintain a bill in equity for the rescission of the contract and the cancellation of the notes and mortgage, whether the notes be negotiable or not, and his vendor insolvent or not; the remedy at law not being full, adequate and complete, by reason of the fact that a court of law has not the power to restore

to him the notes and mortgage, and he could not obtain immediate relief by affirmative action, or because the vendor might delay action on the notes until evidence to establish his defense is not available.

APPEAL from the Chancery Court of Chilton.

Heard before the Hon. JAMES R. DOWDELL.

The bill in this case was filed by the appellee, Rudolph Ehrman, against the appellants, William H. Merritt and M. J. Bond, and it was averred in the bill that in February, 1896, there was being operated in Chilton county, Alabama, a saw mill by the Merritt & Bond Lumber Company, a corporation chartered under the laws of the State of Alabama; that the capital stock of said corporation was $12,000, divided into 120 shares of the value of $100; that the ownership of all of said stock was divided equally between W. H. Merritt and M. J. Bond; and that the affairs of the said corporation are almost entirely within the exclusive control of the said Merritt. The bill then averred that while the affairs of the corporation were in this condition, on February 22, 1896, negotiations were entered into between complainant and said W. H. Merritt for the purchase of the entire assets and control of said Merritt & Bond Lumber Company by complainant, and said Merritt then and there represented and stated to complainant that said corporation owed no debts, except some trifling amounts, which altogether would not exceed $200, and there was lumber sufficient on the yards and in possession of said corporation to pay off all of said indebtedness; that said Merritt was, at the time, secretary and treasurer of said corporation and sole manager thereof, and complainant relying on his statement, entered into a trade, which being reduced to writing, was a conveyance by the Merritt & Bond Lumber Company of all its assets to complainant, in consideration of his agreeing to pay said Merritt & Bond Lumber Company $9,750 at various times, about $600 of which was paid by complainant; and that complainant executed his notes for the balance.

It was further averred that the complainant and said Merritt made said trade and executed said writings without the aid, advice or consent of any attorney; and it was the verbal and expressed understanding of both parties to said trade that com-

plainant should have exclusive control of said corporation, and in fact, exercise all the powers of the corporation; but the writings failed to express such intention, and the shares of stock in said corporation were never transferred to complainant, and the real trade and intention of the parties were never carried out; but complainant took possession of the property of the said corporation.

It was then averred that afterwards, to-wit, in May, 1896, both complainant and said Merritt discovered that the real intent and purpose of the trade had not been effected, and, after some negotiations, it was mutually agreed between the Merritt & Bond Lumber Company, said Merritt and complainant that said trade of February 22, 1896, should be cancelled, and a new contract entered into; that in pursuance of such agreement, said Merritt & Bond Lumber Company cancelled the mortgage executed to it by complainant, and cancelled and delivered to orator all his notes, and complainant restored the possession of all the assets of said corporation to it; that after said contract had been wholly rescinded and annulled, and by mutual agreement between complainant, the said corporation and said Merritt, complainant agreed to purchase, and said Merritt agreed to sell complainant, 60 shares of the capital stock of the said Merritt & Bond Lumber Company, at and for the price of $5,500. Part of the purchase money for the said shares of stock was paid at the time of the purchase; and the complainant's notes were given for the balance. The object of the bill and the other facts averred therein are sufficiently stated in the opinion.

The respondents demurred to the bill upon the following grounds: "1st. The said complainant does not offer to do equity by submitting to carry out the first trade, which was rescinded to make the second, and as a part thereof. 2d. The complainant does not offer to place defendant *in statu quo* before the second trade. 3d. The complainant does not submit and offer to do equity by paying for the use of the property while in his possession. 4th. The complainant's remedy, if he has any, is plain, adequate and complete at law. 5th. The bill shows that complainant has not been, and cannot be injured; and that he has everything he

contracted for and a perfect right and title thereto and can not be disturbed in the benefit of his contract.''

Upon the submission of the cause upon these demurrers, the chancellor rendered a decree overruling them. From this decree the respondents appeal, and assign the rendition thereof as error.

GUNTER & GUNTER and C. P. McINTYRE, for appellant. 1. It is very properly a settled rule of law, that on demurrer, as on other occasions, the bill is construed most strongly against the pleader, who is presumed to know his own case and to have presented it in the most favorable aspect possible consistent with truth. ''Every bill must contain in itself sufficient matters of fact *per se*, to maintain the case of the plaintiff.''—*Harrison v. Nixon*, 9 Peters 503: ''The presumption, upon demurrer, is against the pleader, because he is presumed to state his case in the most favorable way for himself, and, therefore, if he has left anything material in doubt, it is assumed to be in favor of the other party.''—1 Dan'l Chan. Prac., (6 ed.), 550, note; 18 Am. & Eng. Encyc. of Law, 574; 2 Brick. Dig. 332; 3 Brick. Dig. 701, § 6.

2. ''Equity has followed the true principle, of constructing its remedies so that they shall correspond both to the primary right of the injured party, and to *the wrong* by which that right has been violated.''—1 Pom. Eq., § 111. Rescission, though for fraud, involves the placing of the parties *in statu quo*. Every benefit received must be restored.—2 Pom. Eq., § 915; *Walker v. L. & N. R. R. Co.*, 111 Ala. 233; *Jones v. Anderson*, 82 Ala. 302; *Henry v. Allen*, 93 Ala. 197; *Evans v. Gale*, 43 Am. Dec. 614; *Snow v. Alley*, 144 Mass. 546; 21 Am. & Eng. Encyc. of Law, pp. 84-6. When this can not be done there will be no rescission.

3. And when it can be done, there must be an offer made to do so by the party proposing to rescind—and it must be in the bill.—*Jones v. Anderson*, 82 Ala. 302; 2 Pom. Eq., § 385 *et seq.* and notes; *Smith v. Murphy*, 58 Ala. 630; *Micou v. Ashurst*, 55 Ala. 611; *Smith v. Connor*, 65 Ala. 376; *Grider v. A. F. L. M. Co.*, 99 Ala. 281; 21 Ency. of Law, 84-6. There is, moreover, no right in any case to rescind unless, besides all other ingredients involved, there is injury to the party asking rescission.—2 Pom. Eq., § 898.

[Merritt, *et al.* v. Ehrman.]

4. In this case, however, it is personal property only which is involved, viz., stock in a corporation. It is a clear proposition that if A. promises, for a consideration paid by B, to *convey* property to C or *release* a claim to C, the latter may claim the benefit of the transaction. *Burkham v. Mastin,* 54 Ala. 122 ; *Huckabee v. May,* 14 Ala. 263 ; *Cullum v. Bloodgood,* 15 Ala. 40 ; *Carter v. Darby,* 15 Ala. 699 ; *Benziger v. Miller,* 50 Ala. 206 ; *Sherrod v. Hampton,* 25 Ala. 652 ; *Dimmick v. Register,* 92 Ala. 458 ; *Coleman v. Hatcher,* 77 Ala. 217 ; *Linn v. Bass,* 84 Ala. 281. The case for allowing the corporation to claim the benefit of the release of the debt held by Merritt is the stronger in this suit, because the party to whom the promise or representation was made was the owner of half the stock, and thus had a direct personal interest in the plea.—4 Thom. on Corp., § 5269.

5. But it cannot be doubted that, under the facts detailed in the bill, there was an absolute estoppel against Merritt's debt in favor of Ehrman as a purchaser of the stock. And such estoppel amounted to a release, at least in equity, in favor of the corporation, which Ehrman could use, at law or in equity, for his full protection, and the cost of having to use it would be charged up to Merritt if he should ever attempt to collect his debt. His debt may have been only *equitable ;* the bill does not show what it is. It would make no difference, however, if it was legal, since the estoppel is an absolute discharge of it in favor of Merritt, which he could use if the suit was ever brought on it against the corporation.—Bigelow on Estoppel, (5 ed.), 570 ; 3 Brick. Dig. 446. "As a general rule, the estoppel created by a false representation, acted upon, is commensurate with the thing represented, and operates to put the party entitled to the benefit of the estoppel in the same position as if the thing represented was true."—*Grissler v. Powers,* 81 N. Y. 61 ; Big. on Estop., (5 ed.), 651 ; 3 Brick. Dig. 446.

HOUGHTON & COLLIER and S. W. JOHN, *contra.*—The complainants in this case had no adequate remedy at law, and were, therefore, entitled to maintain the present bill.—1 Brick. Dig., 686, § 682 : *Bell v. Lawrence,* 51 Ala. 161.

COLEMAN, J.—The appellee, Ehrman, filed the present bill, praying for the rescission of a contract, made and entered into by him and appellants, who are the respondents to the bill. The court overruled a demurrer to the bill, and respondents appealed to this court. The bill avers that in February, 1896, the complainant entered into a written agreement with the Merritt & Bond Lumber Company, a corporation with a capital stock of twelve thousand dollars, in which there were one hundred and twenty shares of one hundred dollars each, sixty of which shares belonged to W. H. Merritt, and sixty to M. J. Bond. The bill avers that the agreement made with the corporation was mutually rescinded and the parties thereto returned to their former rights and conditions. The bill then avers, that complainant and W. H. Merritt entered into another agreement, by which the former became the purchaser of sixty shares of the stock, for which he agreed to pay five thousand and five hundred dollars ; a part of the purchase price was paid in cash, and the remainder secured by notes and collaterals. The bill avers that as an inducement to the purchase, Wm. H. Merritt, who was the secretary and treasurer and sole manager of the corporation, falsely and fraudulently represented, that the corporation was indebted in an amount not exceeding two hundred dollars, and that there were sufficient assets consisting of lumber, &c., to pay and satisfy this amount of indebtedness. The bill avers that complainant "at the time of making said contract, and making said payment and delivering said securities, was ignorant of the fact that said corporation was indebted to any person or persons in any greater sum than two hundred dollars, but relied upon the statement of said Merritt in making the trade ; and remained in ignorance of any other claim against said corporation until the 8th of July, 1896, when he was informed that said Merritt asserted a claim of four or five thousand dollars, and that on the following day he inquired of said Merritt of the truth of said report, and that Merritt then and there asserted that said corporation did owe him four or five thousand dollars, which he claimed of said corporation." The bill avers that if the claim of Merritt was enforced it would reduce the value of his stock two thousand or twenty-five hundred dollars. The bill offers to return the stock

to the vendor. This is a substantial statement of the facts upon which the prayer for relief is based.

One ground of demurrer is, that the bill is wanting in equity, in that complainant does not offer to carry out the first trade, which was rescinded to make the second and as a part thereof. We do not think the bill shows that the first agreement was rescinded in consideration of making the second agreement. On the contrary it is averred that the first agreement failed to effect the purposes intended, that there was a mistake in its provisions, and that it was mutually rescinded. The first agreement was between the complainant and the corporation, to which neither of the stockholders as such were parties. The second agreement, the one assailed, was between the complainant and the respondents, as stockholders and individuals, by which the complainant became the purchaser and owner of sixty shares of the stock in the corporation, and not the assets of the corporation, as provided in the first agreement. It may be that the answer of the respondents and proof will show the facts to be different from those stated in the bill, but on this appeal we must treat the averments of the bill as true. All reference to the first agreement might well have been omitted from complainant's bill, so far as he seeks relief from the agreement assailed.

The bill shows that complainant went into possession and control of the corporation, and it is insisted on demurrer that complainant should have offered in his bill to account for its use and occupation since the time he secured possession. The corporation is not made a party to the bill, and no relief is sought against it. The object of the bill is to obtain relief as a purchaser of stock from complainant's vendors, to be reimbursed for payments made in the purchase, and discharged from liability for the remainder of the purchase money. No decree rendered in the present case would relieve complainant from a just liability to the corporation.

It is contended in argument that the bill does not specifically show that the debt claimed by respondent Merritt existed at the time of the contract of sale. It is sufficient to say this objection was not raised by the demurrer.

It is further contended that the bill shows upon its face, that Merritt has estopped himself from setting up

[Merritt, *et al.* v. Ehrman.]

any claim against the corporation. We do not clearly see how the corporation can avail itself of the equitable doctrine of estoppel. It has not been induced to take any steps, or do any act, in consequence of the false representations of Merritt. No wrong was done to the corporation or its franchise, but the wrong was solely that done by the owner of the stock to his vendee, the complainant. It has not been injured in any way. The false representations were made to the complainant. By them, complainant was induced to pay out money and incur additional liability to Merritt and not to the corporation. The condition of the corporation remains unchanged as between it and its creditors. If Merritt should sue the corporation in a court of law, we do not see how the corporation could defeat the suit by pleading a fraud perpetrated by Merritt upon complainant, in the sale of his stock to him. It may be that if complainant preferred to claim the benefit of the purchase of the stock, and Merritt should attempt to enforce his claim against the corporation, the complainant might invoke the aid of a court of equity to enjoin a recovery of a judgment against the corporation, or its enforcement after judgment, so far as it would affect the rights of complainant.

One ground of demurrer to the bill is, that complainant has a plain and adequate remedy at law. The bill nowhere seeks a discovery. It does not aver the insolvency of Merritt, nor does it aver that the note executed by complainant for the purchase money was commercial paper, nor that the notes or mortgages, or any of them, delivered in part payment of the purchase money, consisted of commercial paper. All the property involved is personal property. The question is, whether under these circumstances, the remedy at law is as full and adequate as the remedy in equity. The authorities are not in harmony. It is clear, that upon rescission the plaintiff could maintain an action for money had and received, for money paid, or in trover for the value of the notes and securities delivered, or other property not disposed of, and he could also defend against any action upon the promissory note given for the purchase money, it not being commercial paper. It is evident that the powers of a court of law are inadequate to restore to the plaintiff the promissory notes and mortgages delivered

to Merritt, and to this extent he could not be placed *in statu quo,* but if he could recover their full value, there would be no substantial injury. Section 700 of Story's Equity Jurisprudence states the law as follows: "But whatever may have been the doubts or difficulties formerly entertained upon this subject, they seem by the more modern decisions to be fairly put at rest, and the jurisdiction is now maintained in the fullest extent. And these decisions are founded on the true principles of equity jurisprudence, which is not merely remedial but is also preventive of injustice. If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can only retain it for some sinister purpose. If it is a negotiable instrument, it may be used for a fraudulent or improper purpose to the injury of a third person. If it is a deed purporting to convey lands or other hereditaments, its existence in an uncancelled state necessarily has a tendency to throw a cloud over the title. If it is a mere written agreement, solemn or otherwise, still while it exists it is always liable to be applied to improper purposes, and it may be vexatiously litigated at a distance of time when the proper evidence to repel the claim may have been lost or obscured, or when the other party may be disabled from contesting its validity with as much ability and force as he can contest it at the present moment."

In Pomeroy's Equity Jurisprudence, Vol. 1, section 221, the rule is thus stated: "Another illustration may be drawn from the doctrines concerning the cancellation or surrender of written instruments on the ground of some actual fraud either in their original execution or in their subsequent use. Such remedy is entirely equitable; but when the injured party has a legal estate in the subject-matter or a legal primary right, he may set up the actual fraud as a defense in an action at law, if his legal title is thereby attacked, or a recovery is thereby sought against him on the instrument. Whether, under these circumstances, and at the suit of a party holding a legal interest or a legal primary right, the exclusive jurisdiction will be exercised for the purpose of protecting his estate or maintaining his right, by decreeing a cancellation or a surrender of the instrument thus affected by fraud, depends upon the question whether the

[Merritt, *et al.* v Ehrman.]

legal remedies, either affirmative or defensive, open to the party, are inadequate to promote the ends of justice, and to afford him complete relief."

And in Vol. 2 of Pomeroy Eq. Juris., section 914, it is said : "The doctrine is settled that the exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, and the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case where the legal remedy, either affirmative or defensive, which the defrauded party might obtain, would be adequate, certain, and complete."

The same rule is repeated in section 1377 of the third volume of the same author.

The rule that prevails in the English courts is, that equity has jurisdiction in all cases of fraud, and will interfere for the protection of the party injured by the fraud, and this rule prevails in some of the States.— *Waters v. Mattingley*, 1 Bibb 244 ; 4 Am. Dec. 631, and note. We are of opinion that before it can be said that the remedy at law is full and complete, it must appear that the defrauded party can obtain immediate relief, either by affirmative or defensive action, or as stated by Mr. Justice Story, *supra*, that he can not be subjected to "vexatious litigation at a distance of time, when the proper evidence to repel the claim may have been lost or obscured, or when the other party may be disabled from contesting its validity with as much ability and force as he can contest it at the present moment." The bill shows that the defendant holds the promissory note of the complainant for two thousand dollars. He is powerless to compel the holder of the note to institute an action at law on the note. It may be that by delay he would lose the benefit of important evidence of the fraud. It is certain under our statute, that if the holder of the note should die, and his administrator should sue on the note, and complainant's defense depended on his own testimony, he would not be a competent witness to prove the fraud ; or if under these circumstances the plaintiff should die, the evidence of the fraud would be lost, and his estate would be subjected to irreparable damage. The facts averred in the bill, bring the case fairly within the principle declared by Mr. Justice Story, to entitle complainant to invoke equitable intervention. We are of opinion that a different rule has

[Merritt, *et al.* v. Ehrman.]

not been declared in this State. The rule in this State
is, that "fraud itself is never a distinctive ground of
equity jurisprudence ; it is never of itself a foundation
which will uphold a bill in equity." "No matter how
.gross the fraud may be, if the party can have full, com-
plete and adequate redress at law, he can not go into a
court of equity." These expressions can be found in
many cases.—*Smith v. Cockrell*, 66 Ala. 77, and cases
cited. An examination of the cases in which it was
held that a party was not entitled to equitable relief, on
account of the application of the foregoing principles,
will disclose the fact, that the complainant by immediate
affirmative action could obtain relief by suit at law, or
where suit was then pending against him, and the de-
fense could be made in defense of the action. In the
case of *Dickinson v. Lewis*, 34 Ala. 638, the complainant
was being sued on a note, and the defendant in the court
of law filed a bill to enjoin the suit and to cancel the
.notes upon the ground of fraud. His defense was per-
.fect in a court of law, and it was held that his bill was
without equity. In other cases the facts showed that
complainant was in a position to institute an action in a
court of law, and have the question of fraud fully tried
in that court.—*Sadler v. Robinson*, 2 Stew. 520 ; *Knotts
v. Tarer*, 8 Ala. 743 ; *Youngblood v. Youngblood*, 54 Ala.
486 ; *Smith v. Cockrell*, 66 Ala. 64. There is nothing in
the case of *Russell v. Little*, 28 Ala. 160, but when pro-
perly construed asserts the same principle. The prin-
ciple upon which this court has held that a party out of
possession of land could not apply to a court of equity
to remove a cloud from his title, was that, being out of
possession, he could by affirmative action, establish his
title in a court of law ; and that the reason why a party
in possession was entitled to the aid of a court of equity
was, that being in possession, he could not compel a
suit against him in a court of law to test the question,
and that he might lose important evidence by delay.
The same principle applies with equal force where there
is an outstanding note against a party procured by fraud.

We are of opinion that complainant's bill has equity
upon another ground. Although complainant might
enjoin the enforcement of the claim of respondent against
the corporation, so far as it affects the value of the
stock purchased by complainant, he could not obtain

19

[Campbell v. Smith.]

such relief, except through the aid of a court of equity. If the fraud of the respondent is such, that complainant can not obtain relief, except in a court of equity, no sound principle of law will deprive the complainant, who is free from fault, in selecting his equitable remedy. The respondent can not ·take advantage of his own fraud, and reap any benefit from it.

In any aspect the bill is viewed, it contains equity, and the decree of the chancellor must be affirmed.

Affirmed.